# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BARBARA SALYERS, | ) |
| Plaintiff, | ) |
| v. | ) No. 11 C 2688 |
| GE MONEY BANK, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant GE Money Bank's (GEMB) motion to dismiss and motion in the alternative to stay. For the reasons stated below, the motion to dismiss is granted and the motion to stay is denied as moot.

## BACKGROUND

In 2005, Plaintiff Barbara Salyers (Salyers) allegedly opened a Lowe's credit card (Card) account and Capital One allegedly issued and financed the Card. Salyers also allegedly elected to purchase an optional debt cancellation feature for the Card called "Payment Protection," which in the event of involuntary unemployment, disability or other protected event, would cancel certain debt on the Card. In March

1

2007, the account for the Card was allegedly transferred from Capital One to GEMB. Cardholders were allegedly sent a notice of the transfer and of any changes in the terms and conditions for the Card. In April 2007, GEMB allegedly sent Salyers a new GEMB-issued Card and GEMB's credit card agreement (Card Agreement). Salyers then allegedly activated her GEMB-issued Card. Salyers also allegedly elected to participate in GEMB's debt cancellation program called "Account Defender." The Account Defender program, like the Payment Protection program, would allegedly cancel certain debt on the Card in the event of certain qualifying events, such as unemployment or disability. Salyers contends that in February 2009, she became involuntarily unemployed, which is a qualifying event for the Account Defender program.

Salyers allegedly contacted GEMB's customer service department regarding her Account Defender benefits, but was allegedly told to wait thirty days before submitting her claim for benefits. After waiting thirty days, on May 15, 2009, Salyers allegedly filled out and mailed a Benefit Request Form to GEMB. On August 19, 2009, Salyers allegedly received a letter from GEMB stating, "On 7/8/09 we received your request to file for a debt cancellation benefit. We have not received a response from you." (Compl. Par. 72).

In response to this letter, Salyers allegedly made additional attempts to fax and

2

mail her Benefit Request Form, but neither was received by GEMB. On July 13, 2010, Salyers allegedly received a letter from GEMB stating that GEMB would not process her Benefit Request Form because Salyers did not submit a benefit request within one year of the date of her involuntary unemployment. Salyers brought the instant action and includes in her amended complaint a claim brought under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* (Count I), a claim brought under the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.* (Count II), a claim for unconscionability (Count III), a claim for breach of the implied covenant of good faith and fair dealing (Count IV), and a claim for unjust enrichment (Count V). GEMB contends that Salyers agreed to arbitrate the claims in the instant action and GEMB moves to dismiss the instant action, and moves in the alternative to stay the instant action.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(3) (Rule 12(b)(3)), a court should "constru[e] all facts and draw[] reasonable inferences in favor of the plaintiffs." *Faulkenberg v. CB Tax Fran. Sys., LP*, 637 F.3d 801, 806 (7th Cir. 2011). A court ruling on a Rule 12(b)(3) motion is not "obligated to limit its consideration to the pleadings [or to] convert the motion to

one for summary judgment if the parties submit evidence outside the pleadings." *Id.* at 809-10 (internal quotations omitted)(quoting *Contl. Cas. Co. v. Am. Natl. Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005)). When parties have entered into a contract and have agreed to arbitrate disputes arising from that contract, dismissal pursuant to Rule 12(b)(3) is appropriate. *See Contl. Cas. Co.*, 417 F.3d at 733 (stating that the Court has "held dismissal [where both parties to a contract have agreed to arbitrate a dispute] to be appropriate, . . . and, when the question has arisen, [the Court has] held that such dismissal properly is requested under Rule 12(b)(3)").

## DISCUSSION

GEMB argues that this action should be dismissed pending individual arbitration between Salyers and GEMB or in the alternative the action should be stayed. The Card Agreement contained the following arbitration agreement (Arbitration Provision) provided in bold capital letters:

> ANY PAST, PRESENT OR FUTURE LEGAL DISPUTE OR CLAIM OF ANY KIND, INCLUDING STATUTORY AND COMMON LAW CLAIMS AND CLAIMS FOR EQUITABLE RELIEF, THAT RELATES IN ANY WAY TO YOUR ACCOUNT, CARD OR YOUR RELATIONSHIP WITH US ("CLAIM") WILL BE RESOLVED BY BINDING ARBITRATION IF EITHER YOU, WE OR LOWE'S ELECTS TO ARBITRATE.

(Koehler Decl. Ex. A 14). GEMB argues that under the Arbitration Provision, Salyers is obligated to first arbitrate the claims in the instant action.

4

A party seeking to dismiss an action based on an agreement to arbitrate claims must establish: (1) that the parties have entered into a valid arbitration agreement, and (2) the asserted claims fall within the scope of that agreement. *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999). The Federal Arbitration Act (FAA) provides that "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has stated that the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Faulkenberg*, 637 F.3d at 808 (internal quotations omitted)(quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). However, the FAA's provisions should not "be construed so broadly as to include claims that were never intended for arbitration." *Faulkenberg*, 637 F.3d at 808-09 (internal quotations omitted)(quoting *American United Logistics, Inc. v. Catellus Development Corp.*, 319 F.3d 921, 929 (7th Cir. 2003)).

I.  Valid Arbitration Agreement

GEMB argues that a valid arbitration agreement exists between GEMB and

5

Salyers. The determination of whether parties have entered into a valid agreement to arbitrate a dispute "is governed by state-law principles of contract formation." *Faulkenberg*, 637 F.3d at 809 (quoting *Contl. Cas. Co.*, 417 F.3d at 730. In the instant action, the Arbitration Provision in the Card Agreement clearly states that "Utah law shall apply to the extent state law is relevant under section 2 of the FAA in determining the validity of this provision." (Koehler Decl. Ex. A 15). Salyers does not dispute that Utah law applies or that the parties formed a valid arbitration agreement. Utah Code § 25-5-4(2)(e). The court concludes that under Utah law, the parties entered into a valid arbitration agreement.

II. Scope of the Arbitration Provision

GEMB argues that the claims in this action fall within the scope of the Arbitration Provision.

A. Plain Meaning of Language in Arbitration Provision

GEMB argues that the plain meaning of the language in the Arbitration Provision indicates that the claims in this action fall within the scope of the provision. As indicated above, the Arbitration Provision covers a "claim of any kind . . . that relates in any way to [the cardholder's] account, card or [the cardholder's] relationship with" GEMB. (Koehler Decl. Ex. A 14). In the instant action, Salyers' own allegations in her amended complaint illustrate that her Account Defender program she purchased directly related to her Card, her Card Account, and her relationship with GEMB. For example, Salyers alleges that her monthly fees for the

6

Account Defender program were based on the balance amount in her Card account. (A. Compl. Par. 65). Salyers also acknowledges that GEMB issued the Card and administered the Account Defender program. Any cancellation of debt under the Account Defender program would be from the Card illustrating that the claims in this action are connected to Salyers' relationship with GEMB. Thus, based on the plain meaning of the language in the Arbitration provision, the claims in this action fall within the scope of the Arbitration Provision.

### B. Unrelated Collateral Agreement

Salyers also argues that the Account Defender program involves a product separate from the Card and involves an unrelated collateral agreement that is not covered by the Arbitration Provision. It is apparent that the parties intended that the Arbitration Provision would cover disputes concerning the Account Defender program. For example, the "Important Notice Regarding Your Lowe's Visa Credit Card Account April 2007" (Notice) that was sent to customers such as Salyers states: "[i]f you are currently enrolled in Capital One's Payment Protection program, your coverage is now being provided by GE Money Bank through the Account Defender program." (Koehler Decl. Ex. A 6). The Notice, which specifically references the Payment Protection and Account Defender programs also includes a specific section informing the customer of the Arbitration Provision in the Card Agreement. In addition, GEMB has shown that the Account Defender product was sold as an optional feature of a GEMB credit card account and is offered only to GEMB

7

cardholders. The Seventh Circuit has stated that "[o]nce it is clear that the parties have a contract that provides for arbitration of some issues between them, any doubts concerning the scope of the arbitration clause are resolved in favor of arbitration." *Miller v. Flume*, 139 F.3d 1130, 1136 (7th Cir. 1998). In the instant action, there is clear evidence that the parties agreed to arbitrate issues between them and Salyers has not shown that the claims in the instant action are limited to an unrelated collateral agreement. The record reflects that the Card and the Account Defender products she purchased were directly related.

B. Integration Clause

Salyers argues that any addendum is not part of the Card Agreement pursuant to an integration clause (Integration Clause) in the Card Agreement. The Integration Clause states the following:

> This Agreement, together with any application you signed or otherwise submitted in connection with the Account (which is hereby incorporated by reference in this Agreement), constitutes the entire Agreement between you and us relating to your account and supersedes any prior or contemporaneous agreement between you and us relating to your Account. This Agreement may not be amended except in accordance with the provisions of this Agreement.

(Koehler Decl. Ex. A 16). Salyers contends that the Account Defender progam involved a separate agreement. Salyers argues that the phrase in the Arbitration Provision, "your relationship with us" does not apply to Account Defender program because of an addendum (Addendum) referencing the Payment Protection program with Capital One is not included in the Card Agreement. However, the plain

8

language of the Arbitration Provision requires Salyers to arbitrate all claims "relating in any way" to her Card account or her relationship with GEMB is within the Card Agreement. Thus, there is no need to even reference the Addendum in order to find that the claims fall within the scope of the Arbitration Provision. Also, while the Integration Clause applies and limits what can be considered outside of the Card Agreement, the Arbitration Provision and its terms that GEMB is seeking to invoke in this case are within the Card Agreement and thus the Integration Clause does not act as a bar to the claims in this case. Thus, the Integration Clause does not prevent GEMB from invoking the Arbitration Clause.

### C. Capital One Addendum

Salyers argues that she is not bound by the Arbitration Provision because of the Addendum to the prior agreement with Capital One referencing the Payment Protection program. However, regardless of the Addendum, the claims in this action fall within the scope of the Arbitration Provision. In addition, the Addendum states that it was a part of the Capital One account agreement, and thus, when the Card Agreement replaced the Captial One card agreement, the Addendum and any prior proper amendments became part of the Card Agreement. (Koehler Decl. Ex. A 16). Finally, although Salyers attempts to separate the Addendum from the Card Agreement, the record reflects that, even if the court considered the Addendum as part of the prior agreement with Capital One, the Capital One account agreement also contained an arbitration agreement. (Koehler Decl. Ex. A 6). Salyers has not shown

9

that the claims in the instant action are outside the scope of that prior account agreement with Capital One. *See Kiefer*, 174 F.3d at 909 (stating that "a court may not deny a party's request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'")(quoting *United Steelworkers of America v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960)). Thus, the Addendum does not provide a basis for Salyers to avoid the effect of the Arbitration Provision.

Thus, based on the above, GEMB has shown that there is a valid arbitration agreement and that the claims in the instant action are covered by that agreement and since the parties agreed to resolve disputes such as those in the instant action in arbitration, this court is not the proper forum in which to seek a resolution of such disputes. Although Salyers argues in response to the instant motion that she was treated unfairly by GEMB, the merits of her claims are not before this court in ruling on the motion to dismiss. Salyers has relief available to her in arbitration.

The court also notes that the Arbitration Provision was not merely for GEMB's benefit. The provision provided protection to Salyers as well as to GEMB since, to the extent that GEMB ever attempts to bring legal action against Salyers, she also has a right to invoke the arbitration protections of the provision. GEMB has shown that a dismissal of the instant action would be appropriate rather than a stay of the instant action and judicial efficiency would not be promoted if this case were to stagnate on this court's docket during arbitration proceedings. Therefore, the motion to dismiss is granted and the motion to stay is denied as moot.

## CONCLUSION

Based on the foregoing analysis, GEMB's motion to dismiss is granted and the motion to stay is denied as moot.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated:   October 25, 2011